## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

KABLOOM FRANCHISING CORP.,   :

and   :

KABLOOM, LTD.   :

      Plaintiffs,   :

v.   :

DAA-FLORAL, LLC,   :

and   :

ALAN ARMSTRONG   :

      Defendants.   :

File No.

# 04-10955 NG

MAGISTRATE JUDGE Cohen

RECEIPT # 55855
AMOUNT $ 150
SUMMONS ISSUED 2
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 5-13-04

### COMPLAINT

This is an action for preliminary and permanent injunctive relief, and other relief, necessitated by a former franchisee's trademark infringement, unfair competition, and breach of contract regarding the use of trademarks and confidential proprietary information. Plaintiffs KaBloom Franchising Corp. ("KaBloom") and KaBloom, Ltd. (collectively, "Plaintiffs") seek preliminary and permanent injunctive relief, and other relief, against defendants DAA-Floral, LLC ("DAA") and Alan Armstrong ("Armstrong") (collectively "Defendants") for the reasons set forth more fully below.

1

## PARTIES

1.      Plaintiff KaBloom is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 200 Wildwood Avenue, Woburn, Massachusetts 01801.

2.      Plaintiff KaBloom, Ltd. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 200 Wildwood Avenue, Woburn, Massachusetts 01801.

3.      Upon information and belief, defendant DAA is a Pennsylvania limited liability company with its principal place of business at 1327 Fort Washington Avenue, Fort Washington, Pennsylvania 19034.

4.      Upon information and belief, defendant Armstrong is an individual residing at 1327 Fort Washington Avenue, Fort Washington, Pennsylvania 19034.

## JURISDICTION AND VENUE

### Federal Question Jurisdiction

5.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 1338(b), 15 U.S.C. § 1121 and, with respect to certain claims, 28 U.S.C. § 1367, because it is an action brought, in part, under the laws of the United States, specifically the Lanham Act.

### Diversity Jurisdiction

6.      The value of the amount in controversy in this matter, exclusive of interest and costs, exceeds $75,000.

7.      Complete diversity under 28 U.S.C. § 1332 exists between Plaintiffs and Defendants.

8.      Therefore, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

2

## Personal Jurisdiction

9.    This Court has personal jurisdiction over DAA because this legal action is brought, in part, under the franchise agreement entered into by and between KaBloom and DAA on or about July 2, 2003 (the "Franchise Agreement"). The Franchise Agreement was entered into and became effective "upon its acceptance and execution by [KaBloom] in Massachusetts." A true and complete copy of the Franchise Agreement is attached hereto as Exhibit 1.

10.    This Court also has personal jurisdiction over DAA because DAA expressly agreed in the Franchise Agreement that any action brought under the Franchise Agreement "shall be brought only within the judicial district in which [KaBloom] has its principal place of business at the time the action or proceeding is initiated. The parties waive all questions of personal jurisdiction and venue for purposes of carrying out this provision." Franchise Agreement, Section 26.4.1.

11.    This Court has personal jurisdiction over Armstrong because the claim against Armstrong is brought pursuant to a Guarantee, Indemnification, and Acknowledgment, which is Exhibit C to the Franchise Agreement (the "Guarantee"). As part of the Franchise Agreement, the Guarantee was also entered into in Massachusetts and subject to the personal jurisdiction and venue provisions contained in Section 26.4.1 of the Franchise Agreement.

## Venue

12.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because "a substantial part of the events or omissions giving rise to the claim[s], occurred, or a substantial part of property that is the subject of the action is situated" here. 28 U.S.C. § 1391(b)(2).

13.    Also, as stated above in paragraphs 10 and 11, KaBloom and Defendants have waived "all questions of . . . venue for purposes of carrying out" the requirement that actions be

3

brought in the jurisdiction where KaBloom has its principal place of business.   Franchise Agreement, Section 26.4.1.

## Not Required to Be Arbitrated

14.      Section 26.3 of the Franchise Agreement generally provides that "any claim or controversy arising out of or related to this Agreement . . . , the relationship between Franchisee and Franchisor (and Franchisor's Affiliates), or Franchisee's operation of the Store shall be submitted to binding arbitration pursuant to this Section 26.3." However, Section 26.3 specifies certain circumstances, which apply here, where the parties may pursue their remedies in court, including but not limited to actions for injunctive relief and actions relating to Plaintiffs' proprietary marks or confidential information.

15.      Plaintiffs have filed an arbitration demand with JAMS pursuant to which they are seeking, among other things, to recover amounts past due from DAA, together with damages arising out of DAA's anticipatory repudiation of the Franchise Agreement.

16.      Pursuant to Section 26.3 of the Franchise Agreement, certain claims and controversies, including claims or controversies relating to misuse of KaBloom's confidential information and trade secrets, the use of proprietary marks owned by Plaintiffs, and the enforcement of the covenants contained in Section 19 of the Franchise Agreement, are not subject to the mandatory arbitration requirement.

17.      Section 26.5 of the Franchise Agreement clearly specifies that "[n]othing contained herein shall bar the right of either party to seek and obtain injunctive relief from a court of competent jurisdiction in accordance with applicable law against threatened conduct that will cause loss or damage, . . . under the usual equity rules, including the applicable rules for obtaining restraining order[s] and injunctions."

4

18.    The preliminary and permanent injunctive relief sought in this Complaint is not subject to the mandatory arbitration requirement.

19.    Furthermore, the matters raised in this Complaint are not subject to mandatory arbitration because all the counts in this Complaint relate to Defendants' unauthorized use of Plaintiffs' proprietary marks and confidential information.

## ALLEGATIONS COMMON TO ALL COUNTS

### The KaBloom Business, Trademarks, and Service Marks

20.    KaBloom, Ltd., the parent corporation of KaBloom, owns various trademarks, trade names, service marks, logos, emblems, and indicia of origin (including registration numbers 2286681, 2288276, and 2337999 on the principal register of the United States Patent and Trademark Office) (collectively, the "KaBloom Marks").

21.    Plaintiffs have developed a format and system (the "KaBloom System") for the establishment and operation of retail floral businesses which operate under the KaBloom Marks and are primarily engaged in the sale of high quality fresh cut flowers, plants, other complementary and compatible merchandise and gift items, and related floral arrangement services. As the owner of the KaBloom Marks, KaBloom, Ltd. has the right to direct and control litigation over infringement or dilution of the KaBloom Marks.

22.    Pursuant to a license from KaBloom, Ltd., KaBloom grants to other persons and entities throughout North America the right to establish and operate retail floral businesses under the KaBloom System and the KaBloom Marks ("KaBloom Stores").

23.    KaBloom, Ltd. has owned and operated KaBloom Stores since December 1998.

24.    KaBloom has granted franchises for the operation of KaBloom Stores since October 2001.

25.     Currently, there are approximately 70 authorized KaBloom Stores in the United States.

26.     KaBloom, Ltd. has continuously used each of the KaBloom Marks since the date of their registration.

27.     KaBloom, Ltd. has given notice to the public of the registration of the KaBloom Marks as provided in 15 U.S.C. § 1111.

28.     The KaBloom Marks are valid and have developed a secondary meaning within the trade and public in favor of those who have used and who now use the KaBloom Marks to identify the quality of services and products of the KaBloom System.

29.     Plaintiffs and authorized KaBloom franchisees use the KaBloom Marks as the marks and trade identity by which the products and services offered by Plaintiffs and authorized KaBloom franchisees are distinguished from other retail floral businesses.

30.     Through their corporate and franchised KaBloom Stores, Plaintiffs have become widely known as a provider of floral products.

31.     By virtue of the wide reknown of the KaBloom Marks, the KaBloom Marks have become distinctive and famous in the minds of the purchasing public.

32.     Plaintiffs and the authorized KaBloom franchisees have extensively advertised and promoted their KaBloom Stores and the products and services they offer under the KaBloom Marks throughout the United States.  KaBloom has expended millions of dollars to develop goodwill in the KaBloom Marks and to cause consumers to recognize the KaBloom Marks as distinctly designating floral products and services originating with the KaBloom System.

33.     As a result of such efforts and the considerable money spent in connection therewith, the products and services offered by Plaintiffs and the authorized KaBloom

6

franchisees under the KaBloom Marks have met with widespread public approval and have established demand and goodwill among consumers.

<u>The Agreements Between the Parties</u>

34.    On or about July 2, 2003, KaBloom and DAA entered the Franchise Agreement, which provided DAA with the right and the obligation to operate, for a ten-year term, a KaBloom Store at 145 Lancaster Avenue, Ardmore, Pennsylvania 19003 (the "Store").

35.    Pursuant to Section 4.3 of the Franchise Agreement, DAA was required to pay a monthly continuing royalty fee based upon DAA's volume of sales.

36.    Pursuant to Section 4.4 of the Franchise Agreement, DAA was required to submit, expend and contribute certain amounts in connection with advertising, as required by KaBloom pursuant to Section 14.

37.    Pursuant to Section 14.2.2, DAA was required to contribute to an advertising fund such amounts as required by KaBloom, not to exceed 4% of gross sales.  At the time DAA entered the Franchise Agreement, the required contribution rate was 3% of gross sales, as specified therein.

38.    All payments required under Section 4 of the Franchise Agreement are due and payable by the tenth business day after each month.

39.    Pursuant to Section 13.2 of the Franchise Agreement, DAA was required to submit a royalty report, marketing report, and gross sales report no later than the tenth day of each month, or such other time corresponding to the required royalty and advertising payments.

40.    DAA purchased from KaBloom, Ltd. certain products for sale at the Store.

41.    Pursuant to Section 9.18 of the Franchise Agreement, DAA was obligated to pay promptly all distributors, lessors, contractors, suppliers, trade creditors, employees and other

creditors promptly as the debts became due, and failure to make prompt payments constituted a breach of the Franchise Agreement.

42.    Pursuant to Section 17.3, KaBloom had the right to terminate the Franchise Agreement in the event DAA failed to promptly pay amounts due to KaBloom or KaBloom's affiliates and did not cure such default within five days of receiving written notice of default.

43.    Pursuant to Section 17.2.2, KaBloom had the right to terminate the Franchise Agreement immediately, without any opportunity to cure the default, if DAA ceased to operate the Store for three consecutive days.

44.    Upon termination of the Franchise Agreement, Section 18 provides that DAA shall promptly take certain actions, including but not limited to the following: (a) refrain from holding itself out as a present or former KaBloom franchisee; (b) immediately cease to use the KaBloom Marks and the System; (c) deidentify the Store from its former affiliation with the KaBloom Marks and the KaBloom System; (d) cancel any assumed name registration which includes the mark "KABLOOM" or any other KaBloom Mark and furnish evidence of compliance to KaBloom within 15 days after termination of the Franchise Agreement; (e) cancel (or transfer, if applicable) any local telephone directory or online directory listings associated with the former KaBloom Store, and provide evidence thereof within 15 days after termination of the Franchise Agreement; (f) change the Store's telephone number, if KaBloom does not assume the lease; and (g) immediately deliver to KaBloom all manuals, supplements, records, and instructions containing confidential information, and all software provided or licensed by KaBloom.

45.    Pursuant to Section 18.13, DAA is required to pay to KaBloom all damages, costs, and expenses, including reasonable attorneys' fees, incurred by KaBloom to enforce any of the provisions of Section 18 subsequent to the termination of the Franchise Agreement.

46.    On or about July 2, 2003, Armstrong executed the Guarantee as an inducement for KaBloom to enter the Franchise Agreement with DAA.

47.    Pursuant to the Guarantee, Armstrong acknowledged and agreed to be individually bound by the post-termination obligations contained in Sections 18 and 19 of the Franchise Agreement.

<u>DAA's Defaults and Termination</u>

48.    DAA failed to pay KaBloom, Ltd. for various products that were ordered by DAA and supplied by KaBloom, Ltd.

49.    DAA failed to pay KaBloom certain royalty fees, failed to make certain advertising contributions, and failed to make other payments required under the Franchise Agreement.

50.    By letter dated March 8, 2004, KaBloom gave notice to DAA that it owed past due amounts to KaBloom and KaBloom's affiliates totaling in excess of $35,000 and was in default under the Franchise Agreement. The March 8, 2004 letter demanded payment of the past due amounts within five days of receipt of the letter and notified DAA that KaBloom would terminate the Franchise Agreement if DAA failed to cure the default.

51.    DAA failed to cure the monetary defaults, and on or about March 16, 2004, DAA, through Armstrong, informed a representative of KaBloom that DAA would not be making any payments whatsoever to KaBloom.

52. DAA ceased operating the Store as required by the Franchise Agreement from at least March 23 through 25.

53. By letter dated March 26, 2004, sent by counsel for KaBloom, KaBloom terminated the Franchise Agreement effective upon receipt, based independently upon each of the foregoing material breaches and DAA's anticipatory repudiation of the Franchise Agreement, and advised DAA that it was to adhere to its post-termination obligations including, among other things, the requirements set forth in Sections 18 and 19.3 of the Franchise Agreement.

54. The termination of the Franchise Agreement precludes Defendants from any further use of the KaBloom Marks in or around the Store or elsewhere.

## Defendants' Continuing Use of the KaBloom Marks and Failure to Comply with Post-Termination Obligations

55. Since the termination of the Franchise Agreement, Defendants have not completely removed the KaBloom Marks from the Store or ceased using the KaBloom Marks to identify the Store.

56. By letter dated April 1, 2004, counsel for KaBloom reiterated that DAA was required to comply with its post-termination obligations under the Franchise Agreement, which obligations require that DAA cease using the KaBloom Marks.

57. By letter dated April 8, 2004, counsel for KaBloom reiterated to Armstrong that, pursuant to the Guarantee, he was individually bound by various obligations under the Franchise Agreement, including the post-termination obligations contained therein.

58. By letter dated April 22, 2004, counsel for KaBloom sent to counsel for Defendants a letter entitled "DEMAND FOR COMPLIANCE WITH POST-TERMINATION OBLIGATIONS; CEASE AND DESIST FROM FURTHER USE OF THE KABLOOM

10

MARKS," which demanded that Defendants immediately comply with their post-termination obligations including specifically their obligation to cease any further use of the KaBloom Marks and to deidentify the Store from its former association with the KaBloom Marks and the KaBloom System.

59.    Defendants have continued to misuse the KaBloom Marks despite receiving notification that they are required to comply with the post-termination obligations under the Franchise Agreement, including the requirement to cease using the KaBloom Marks.  More specifically, Defendants have failed to remove an interior sign on the wall which reads "KaBloom The Power of Fresh Flowers," have left banners, binders and other materials bearing the KaBloom Marks on the floor of the Store, and have failed to remove the KaBloom Marks from the marquee sign for the shopping center where the Store is located.  Defendants have only partially removed the primary KaBloom sign over the entrance to the Store and only partially scraped a KaBloom sign off the window of the Store.

## COUNT I
## Breach of Contract

### (By KaBloom Against DAA and Armstrong)

60.    Plaintiffs repeat and reallege paragraphs 1 through 59 of this Complaint, as if fully set forth herein.

61.    Pursuant to Section 18 of the Franchise Agreement, following termination of the Franchise Agreement, DAA was obligated to promptly take certain actions, including but not limited to the following: (a) refrain from holding itself out as a present or former KaBloom franchisee; (b) immediately cease to use the KaBloom Marks and the System; (c) deidentify the Store from its former affiliation with the KaBloom Marks and the KaBloom System; (d) cancel

any assumed name registration which includes the mark "KABLOOM" or any other KaBloom Mark and furnish evidence of compliance to KaBloom within 15 days after termination of the Franchise Agreement; (e) cancel (or transfer, if applicable) any local telephone directory or online directory listings associated with the former KaBloom Store, and provide evidence thereof within 15 days after termination of the Franchise Agreement; (f) change the Store's telephone number, if KaBloom does not assume the lease; and (g) immediately deliver to KaBloom all manuals, supplements, records, and instructions containing confidential information, and all software provided or licensed by KaBloom.

62.    Pursuant to the Guarantee, Armstrong acknowledged and agreed that he was individually bound by all of the post-termination obligations set forth in Section 18 of the Franchise Agreement.

63.    Despite their obligation to do so following termination of the Franchise Agreement, Defendants have failed to cease all use of the KaBloom Marks, to cease their identification as an existing or former KaBloom franchisee, and to comply with the other mandatory post-termination obligations.

64.    DAA's failure to cease all use of the KaBloom Marks, to cease identifying itself as an existing or former KaBloom franchisee, and to otherwise comply with the mandatory post-termination obligations constitutes a breach of the Franchise Agreement and has damaged KaBloom.

65.    Armstrong's failure to cease all use of the KaBloom Marks, to cause DAA to cease identifying itself as an existing or former KaBloom franchisee, and to otherwise comply with the mandatory post-termination obligations constitutes a breach of the Guarantee and the Franchise Agreement, of which the Guarantee is an exhibit, and has damaged KaBloom.

12

**WHEREFORE,** KaBloom demands judgment against Defendants for preliminary and permanent injunctive relief requiring Defendants, and their affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert with or participation with them, to cease all use of the KaBloom Marks, to cease identifying DAA as an existing or former KaBloom franchisee, and to comply with the remaining post-termination obligations under the Franchise Agreement, together with attorneys' fees and costs, and such other and further relief as this Court shall deem just and proper.

## COUNT II
### Federal Trademark Infringement
### (Violation of § 32 of the Lanham Act, 15 U.S.C. § 1114)

### (By KaBloom, Ltd. Against DAA)

66.     Plaintiffs repeat and reallege paragraphs 1 through 65 of this Complaint, as if fully set forth herein.

67.     Despite the well-known prior statutory and common law rights of KaBloom, Ltd. in the exclusive right to control the use and licensing of its federally-registered trademark "KABLOOM" and the other KaBloom Marks, DAA has, without the authorization of Plaintiffs, continued to use the KaBloom Marks to identify the Store.

68.     DAA's unauthorized use of the KaBloom Marks constitutes infringement of the KaBloom Marks. Such use is likely to cause confusion, deception or mistake, all in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

69.     By reason of DAA's on-going acts of infringement, KaBloom, Ltd. has been seriously damaged and, unless DAA is restrained from future infringement of the KaBloom Marks, will continue to be so damaged.

13

70.    DAA's on-going acts of infringement are malicious, fraudulent, willful, and deliberate.

71.    DAA's on-going acts of infringement have inflicted and continue to inflict irreparable harm on KaBloom, Ltd.

72.    KaBloom, Ltd. has no adequate remedy at law because the KaBloom Marks are unique and represent to the public Plaintiffs' identity, reputation, and goodwill, such that damages alone cannot fully compensate KaBloom, Ltd. for DAA's misconduct.

73.    KaBloom, Ltd. is therefore entitled to an injunction against DAA's use of the KaBloom Marks as DAA's commercial use of the KaBloom Marks will cause irreparable harm to KaBloom, Ltd. and KaBloom, Ltd. has no adequate remedy at law.

74.    KaBloom, Ltd. has a right to reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

75.    No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, 1116, and 1117, KaBloom, Ltd. demands judgment against DAA:

a.    Preliminarily and permanently restraining and enjoining DAA, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert with or participation with them, from using the KaBloom Marks at the Store or elsewhere;

b.    Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

14

**COUNT III**
**Federal Unfair Competition – False Designation of Origin**
**(Violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))**

**(By KaBloom, Ltd. Against DAA)**

76.    Plaintiffs repeat and reallege paragraphs 1 through 75 of this Complaint, as if fully set forth herein.

77.    Paragraph 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

78.    DAA's failure to cease using the KaBloom Marks at its store constitutes:

    (A)    a false designation of origin;

    (B)    a false and misleading description of fact; and

    (C)    a false and misleading representation of fact;

that caused and is likely to continue to cause confusion, or to cause mistake, or deception, as to the affiliation of DAA's store with Plaintiffs, and to cause confusion, or to cause mistake, or deception, to the effect that Plaintiffs sponsor or approve of DAA's activities in connection with the Store and have affected interstate commerce, all in violation of 15 U.S.C. § 1125(a).

79.    As a direct and proximate result of DAA's unfair competition, KaBloom, Ltd. has been and is likely to be further substantially injured in its business, including its goodwill and reputation, resulting in lost revenues and profits, and diminished goodwill.

80.    DAA's on-going acts in violation of 15 U.S.C. § 1125(a) are malicious, fraudulent, willful, and deliberate.

15

81.    DAA's on-going acts in violation of 15 U.S.C. § 1125(a) have inflicted irreparable harm on KaBloom, Ltd.

82.    KaBloom, Ltd. has no adequate remedy at law because the KaBloom Marks are unique and represent to the public Plaintiffs' identity, reputation, and goodwill, such that damages alone cannot fully compensate KaBloom, Ltd. for DAA's misconduct.

83.    Unless enjoined by the Court, DAA will continue to falsely create the appearance that the Store is affiliated with Plaintiffs, to Plaintiffs' irreparable injury.  This threat of future injury to Plaintiffs' business identity, goodwill, and reputation requires injunctive relief to prevent DAA's continued unfair competition, and to ameliorate and mitigate Plaintiffs' injuries.

84.    Although it will not fully compensate KaBloom, Ltd., for those acts of unfair competition and infringement committed prior to the issuance of any injunction, KaBloom, Ltd. is entitled to an award of damages that KaBloom, Ltd. has suffered in an amount to be determined at trial.

85.    KaBloom, Ltd. has a right to reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

86.    No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1116, 1117 and 1125(a), KaBloom, Ltd. demands judgment against DAA:

a.    Preliminarily and permanently restraining and enjoining DAA, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert with or participation with them, from using the KaBloom Marks at the Store or elsewhere;

16

b.    Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

## COUNT IV
## Common Law Trademark Infringement

### (By KaBloom, Ltd. Against DAA)

87.    Plaintiffs repeat and reallege paragraphs 1 through 86 of this Complaint, as if fully set forth herein.

88.    Through the adoption and continuous use of the KaBloom Marks by Kabloom, Ltd., it developed and acquired trademark rights at common law in the KaBloom Marks. Plaintiffs continue to regulate the use of the KaBloom Marks by franchisees of the KaBloom System.

89.    The KaBloom Marks are distinctive and have developed a secondary meaning in the public mind, in that the public has come to know and recognize the KaBloom Marks as identifying floral products and services as those of Plaintiffs and the KaBloom System exclusively, as distinguished from competitors of KaBloom. The KaBloom Marks have become known by the public as indicative of the uniform high quality of products and services provided by KaBloom, and the KaBloom Marks have developed and acquired an outstanding celebrity symbolizing the goodwill of great value which KaBloom has created.

90.    DAA, by the acts complained of herein, has infringed the KaBloom Marks under the common law. Such acts have been and are being committed with the intent and purpose of trading upon the goodwill and reputations associated with the KaBloom Marks.

91.    By reason of DAA's actions, KaBloom, Ltd. has been and will continue to be seriously and irreparably damaged unless DAA is enjoined from infringing the KaBloom Marks.

In addition, DAA's actions have caused actual damages to KaBloom, Ltd. in an amount which has not yet been fully determined.

92.    KaBloom, Ltd. has no adequate remedy at law because the KaBloom Marks are unique and represent to the public Plaintiffs' identity, reputation, and goodwill, such that damages alone cannot fully compensate KaBloom, Ltd. for DAA's misconduct.

93.    If DAA is permitted to continue using the KaBloom Marks, the KaBloom Marks will continue to be infringed.

94.    No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, KaBloom, Ltd. demands judgment against DAA:

a.    Preliminarily and permanently restraining and enjoining DAA, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert with or participation with them, from using the KaBloom Marks at the Store or elsewhere;

b.    Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

**COUNT V**
**Common Law Unfair Competition**

**(By KaBloom, Ltd. Against DAA)**

95.    Plaintiffs repeat and reallege paragraphs 1 through 94 of this Complaint, as if fully set forth herein.

96.    DAA's unauthorized use of the KaBloom Marks constitutes use of a false designation of origin or a false or misleading representation, which wrongfully and falsely designates, describes, represents and passes-off DAA's store as being sponsored by, approved

18

by, or connected with KaBloom, Ltd., and is likely to cause confusion as to DAA's affiliation, connection or association with KaBloom, Ltd.

97.    DAA's acts constitute deceptive trade practices through willful unfair or deceptive acts or practices.

98.    KaBloom, Ltd. is therefore entitled to an injunction against DAA's use of the KaBloom Marks as DAA's commercial use of the KaBloom Marks will cause irreparable harm to KaBloom, Ltd. and KaBloom, Ltd. has no adequate remedy at law.

99.    Although it will not fully compensate KaBloom, Ltd., for those acts of unfair competition committed previous to the issuance of any injunction, KaBloom, Ltd. is entitled to an award of damages that KaBloom, Ltd. has suffered in an amount to be determined at trial.

100.    No previous injunctive relief has been awarded with respect to this matter in this case or any other case.

**WHEREFORE**, KaBloom, Ltd. demands judgment against DAA:

a.    Preliminarily and permanently restraining and enjoining DAA, its affiliates, subsidiaries, officers, agents, servants, employees and attorneys, and all those who act in concert with or participation with them, from using the KaBloom Marks at the Store or elsewhere;

b.    Granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

Respectfully submitted,

PIPER RUDNICK LLP

Steven J. Buttacavoli (BBO #651440)
One International Place, 21st Floor
Boston, MA  02110-2600
(617) 406-6000 (*telephone*)
(617) 406-6100 (*fax*)

Counsel for Plaintiffs KaBloom Franchising Corp.
and KaBloom, Ltd.

Dated:  May 12, 2004