IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| KABLOOM FRANCHISING CORP., | : | File No. |
| and | : | |
| KABLOOM, LTD. | : | 04-10955 NG |
| Plaintiffs, | : | |
| v. | : | |
| DAA-FLORAL, LLC, | : | |
| and | : | |
| ALAN ARMSTRONG | : | |
| Defendants. | : | |

### AFFIDAVIT OF STEVEN SIEGEL

I, Steven Siegel, depose and say:

1. I am Executive Vice President, Chief Operating Officer, and Director for both KaBloom, Ltd. and KaBloom Franchising Corp. The information contained in this affidavit is based on my personal knowledge, information provided to me by others, and the records of KaBloom, Ltd. and KaBloom Franchising Corp.

2. KaBloom Franchising Corp. ("KaBloom") is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 200 Wildwood Avenue, Woburn, Massachusetts 01801. KaBloom is a wholly owned subsidiary of KaBloom, Ltd.

1

3. KaBloom, Ltd. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 200 Wildwood Avenue, Woburn, Massachusetts 01801.

<u>The KaBloom Business, Trademarks, and Service Marks</u>

4. KaBloom, Ltd. owns various trademarks, including but not limited to the following:

    a. The name "KABLOOM", which was registered on the Principal Register of the United States Patent and Trademark Office on October 12, 1999 as Federal Registration No. 2286681.

    b. "KABLOOM", with design, which was registered on the Principal Register of the United States Patent and Trademark Office on October 19, 1999 as Federal Registration No. 2288276.

    c. The phrase "KABLOOM THE POWER OF FRESH FLOWERS" with design, which was registered on the Principal Register of the United States Patent and Trademark Office on April 4, 2000 as Federal Registration No. 2337999.

5. In addition to the foregoing registered trademarks, KaBloom, Ltd. owns certain trade names, service marks, logos, emblems, and indicia of origin (collectively, the "KaBloom Marks").

6. KaBloom and KaBloom, Ltd. have developed a format and system (the "KaBloom System") for the establishment and operation of retail floral businesses which operate under the KaBloom Marks and are primarily engaged in the sale of high quality fresh cut flowers, plants, other complementary and compatible merchandise and gift items, and related floral arrangement services.

7. Pursuant to a license from KaBloom, Ltd., KaBloom grants to other persons and entities throughout North America the right to establish and operate retail floral businesses under the KaBloom System and the KaBloom Marks ("KaBloom Stores").

8. KaBloom, Ltd. has owned and operated KaBloom Stores since December 1998.

9. KaBloom has granted franchises for the operation of KaBloom Stores since October 2001.

10. Currently, there are approximately 70 authorized KaBloom Stores in the United States.

11. KaBloom, Ltd. has continuously used each of the KaBloom Marks since the date of their registration.

12. KaBloom, Ltd. has given notice to the public of the registration of the KaBloom Marks as provided in 15 U.S.C. § 1111.

13. KaBloom, KaBloom, Ltd. and authorized KaBloom franchisees use the KaBloom Marks as the marks and trade identity by which the products and services they offer are distinguished from other retail floral businesses.

14. KaBloom and the authorized KaBloom franchisees have extensively advertised and promoted their KaBloom Stores and the products and services they offer under the KaBloom Marks throughout the United States. KaBloom has expended millions of dollars to develop goodwill in the KaBloom Marks and to cause consumers to recognize the KaBloom Marks as distinctly designating floral products and services originating with the KaBloom System.

15. As a result of such efforts and the considerable money spent in connection therewith, the products and services offered by Plaintiffs and the authorized KaBloom

franchisees under the KaBloom Marks have met with widespread public approval and have established demand and goodwill among consumers.

### The Franchise Agreement and the Guarantee

16. On or about July 2, 2003, KaBloom and DAA-Floral, LLC ("DAA") entered a franchise agreement (the "Franchise Agreement"), which provided DAA with the right and the obligation to operate, for a ten-year term, a KaBloom Store at 145 Lancaster Avenue, Ardmore, Pennsylvania 19003 (the "Store"). A true and correct copy of the Franchise Agreement is attached hereto as Exhibit 1.

17. On or about July 2, 2003, Alan Armstrong, DAA's principal ("Armstrong"), executed a Guarantee, Indemnification, and Acknowledgment (the "Guarantee") as an inducement for KaBloom to enter the Franchise Agreement with DAA. A true and correct copy of the Guarantee is attached to the Franchise Agreement (Exhibit 1 hereto) as Exhibit C.

18. Pursuant to the Guarantee, Armstrong acknowledged and agreed, among other things, to be individually bound by the post-termination obligations contained in Sections 18 and 19 of the Franchise Agreement.

19. DAA purchased from KaBloom, Ltd. certain products for sale at the Store.

### DAA's Defaults and Termination

20. DAA failed to pay KaBloom, Ltd. for various products that were ordered by DAA and supplied by KaBloom, Ltd.

21. DAA failed to pay KaBloom certain royalty fees, failed to make certain advertising contributions, and failed to make other payments required under the Franchise Agreement.

22. By letter dated March 8, 2004, KaBloom gave notice to DAA that it owed past due amounts to KaBloom and KaBloom's affiliates totaling in excess of $35,000 and was in default under the Franchise Agreement. The March 8, 2004 letter demanded payment of the past due amounts within five days of receipt of the letter and notified DAA that KaBloom would terminate the Franchise Agreement if DAA failed to cure the default. A true and correct copy of the March 8, 2004 letter is attached hereto as Exhibit 2.

23. DAA failed to cure the monetary defaults.

24. DAA ceased operating the Store, which operation was required by the Franchise Agreement, from at least March 23 through 25.

### Defendants' Failure to Comply with Post-Termination Obligations

25. Following termination of the Franchise Agreement, neither DAA nor Armstrong have ceased all use of the KaBloom Marks at the Store.

26. Following termination of the Franchise Agreement, neither DAA nor Armstrong have returned to KaBloom all manuals, supplements, records, and instructions containing confidential information.

27. Although the Store is currently closed for business, DAA and Armstrong's continuing use of the KaBloom Marks at the Store present a direct and immediate threat to the KaBloom Marks, irreparably harming the goodwill and business reputation of the KaBloom franchised system.

28. Moreover, the confusion to the public created by DAA and Armstrong's misuse of the KaBloom Marks creates the likelihood that the public will be confused and deceived into believing that KaBloom and KaBloom, Ltd. somehow sponsor or approve of the abandoned Store.

29. Following termination of the Franchise Agreement, neither DAA nor Armstrong have paid the past due amounts owed to KaBloom, Ltd. for DAA's purchases of products.

30. Following termination of the Franchise Agreement, neither DAA nor Armstrong have paid to KaBloom the past due royalty fees, advertising contributions, and other fees under the Franchise Agreement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May __10__, 2004

_____
Steven Siegel